UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL WEBB,

        Plaintiff,

v.                    **DECISION AND ORDER**
                     01-CV-149S

DONALD SELSKY, Director of Special Housing
Program for the Department of Correctional
Services, Captain M. KEARNEY at Southport
Correctional Facility, and Lt. NAGY at
Greenhaven Correctional Facility,

        Defendants.

## I. INTRODUCTION

In this action, pro se Plaintiff Michael Webb alleges, pursuant to 42 U.S.C. §1983, that Defendants violated his due process rights by failing to properly conduct disciplinary hearings while he was incarcerated at Green Haven Correctional Facility and Southport Correctional Facility in the custody of the Department of Correctional Services. Presently before the Court is Defendants' Motion for Summary Judgment.[1] (Docket No. 60). For the following reasons, Defendants' Motion is granted in its entirety.

## II. BACKGROUND

### A. Procedural History

Plaintiff's Complaint was filed on March 2, 2001. Because Plaintiff was granted *in*

---

[1] In support of their Motion for Summary Judgment, Defendants filed the following documents: a memorandum of law (Docket No. 63), a Rule 56 Statement of Undisputed Facts (Docket No. 62), and the Declaration of Peter B. Sullivan with exhibits (Docket No. 61). In opposition to Defendants' Motion, Plaintiff filed the following documents: a Statement of Disputed Facts with attachments (Docket No. 69) and a memorandum in opposition with attachments (Docket No. 70). As the Court had imposed a deadline of October 13, 2006, for the filing of dispositive motions, Defendants also filed a motion seeking a retroactive extension of the filing deadline to October 16, 2006, in light of a massive snowstorm in the Buffalo area on October 12-13, 2006, and extensive power failures thereafter. Plaintiff opposed the extension of time unless he was likewise granted an extension of time in which to respond to Defendants' Motion. The Court (Elfvin,J.) granted that extensions of time to both Plaintiff and Defendants.

*forma pauperis* status, his Complaint was screened pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(a). As a result of this screening process, it was determined that only Plaintiff's claims against defendants Selsky, Kearney and Nagy, in their individual capacities, were actionable. Defendants filed the instant Motion for Summary Judgment on October 16, 2006. Plaintiff's Statement of Disputed Facts was filed on January 3, 2007 and his Memorandum in Opposition was filed on January 8, 2007. Defendants did not file any reply papers. The Court (Elfvin, J.) deemed the matter submitted on the papers on January 12, 2007. The matter was reassigned to the undersigned on October 17, 2007. The facts underlying Plaintiff's claims are discussed below.

**B.   Facts**

    1.   1997 Green Haven Hearing

On August 11, 1997, Plaintiff was ordered to "double bunk" in a cell at the Green Haven Correctional Facility. (Plntf's Rule 56 Stmt. ¶ 2). Plaintiff refused to do so and was charged with interference with an employee, threats and refusing a direct order. (Plntf's Rule 56 Stmt. ¶ 3.) In preparation for his hearing on the charges, Plaintiff requested that he be provided with the medical and mental health forms permitting him to be double bunked. (Plntf's Rule 56 Stmt. ¶4; R. 122-23).[2] In a letter to his legal assistant, Plaintiff also asked for the "mental health professional who reviewed my records and approved me for double bunking status." (R. 123).

On August 17, 1997, defendant Nagy commenced the disciplinary hearing. (Plntf's Rule 56 Stmt. ¶ 6). At the hearing, Plaintiff argued that his medical condition precluded

---

[2]Page references preceded by "R." indicate the page number of the exhibit attached to the Sullivan Declaration submitted in support of defendants' motion.

2

him from double bunking, (R. 133), and requested that Nagy call various witnesses whose names were unknown to Plaintiff. (Plntf's Rule 56 Stmt. ¶ 7; R. 132-33.) Defendant Nagy adjourned the hearing and instructed Plaintiff to go on sick call and be seen by a doctor, physician's assistant or registered nurse to obtain a written statement documenting his medical preclusion from double bunking. (Plntf's Rule 56 Stmt. ¶ 8; R. 134). Nagy also instructed Plaintiff to obtain the names of any other witnesses he wanted to call. (R. 134).

Nagy reconvened the hearing on August 20, 1997. Nagy called as a witness, Nurse Faour who appeared at the hearing with Plaintiff's medical records. (Plntf's Rule 56 Stmt. ¶ 10; R. 135). Faour testified that based on Plaintiff's medical records, including a physical examination conducted on August 19, 1997, Plaintiff was not precluded from double bunking. (R. 135-36). Plaintiff interposed an objection during Faour's testimony, but Nagy instructed him to hold his objection and the basis of the objection was not articulated. (R. 135). When Nagy provided Plaintiff with an opportunity to speak, Plaintiff only raised an objection to Nagy presiding over the hearing because he claimed that only a Captain or the Superintendent could preside over a Superintendent's hearing. (R. 137). No other witnesses were called or requested by Plaintiff during the remainder of the hearing.[3]

On August 20, 1997, Nagy found Plaintiff guilty of the charges and imposed a penalty of 120 days[4] confinement in his cell, loss of packages, commissary and phone and

---

[3] Portions of the tape recording of the hearing are inaudible and therefore were not transcribed. Plaintiff alleges that, in addition to the facility physician, Nagy failed to call a corrections officer, the inmate assigned to the cell in which Plaintiff was to double bunk, and a mental health provider. There is no indication once the hearing resumed, however, that Plaintiff had obtained the names of those individuals or again requested that they be called as witnesses. As a result, Plaintiff waived his right to call those witnesses. See Bedoya v. Coughlin, 91 F.3d 349, 350-51 (2d Cir. 1996).

[4] The transcript of the hearing indicates that a confinement period of 120 days was imposed (R. 138), while the written disposition indicates a period of 180 days with 60 days suspended. (R. 129).

recommended the loss of six months of good time credits. (Plntf's Rule 56 Stmt. ¶ 12; R. 138). Plaintiff appealed the determination to defendant Selsky. On October 21, 1997, Selsky modified Plaintiff's sentence by dismissing the charge of interference with an employee and reducing Plaintiff's punishment to 90 days keeplock confinement and loss of privileges and recommended the loss of three months of good time credits. (Plntf's Rule 56 Stmt. ¶ 12; R. 140).[5] Plaintiff served 90 days in keeplock confinement from August 11, 1997 to November 9, 1997 at Green Haven, Wende and Attica correctional facilities. (Plntf's Rule 56 Stmt. ¶ 19; R. 93).[6] Plaintiff filed an Article 78 proceeding challenging the outcome of the hearing. While the Article 78 proceeding was pending, Plaintiff's sentence was administratively reversed, and thus the Article 78 proceeding was dismissed as moot. (Plntf's Rule 56 Stmt. ¶ 18; R. 203-04).

Plaintiff testified at his deposition concerning the conditions of his keeplock confinement. Plaintiff was confined to his cell for 23 hours per day with one hour outside of his cell for recreation. (R. 94-95). Plaintiff chose not to avail himself of the hour of recreation and instead chose to remain in his cell for 24 hours per day. (R. 95). Depending on the facility at which Plaintiff was housed, his cell was located in general population, or in a unit specifically designated for keeplock. (R. 94). Plaintiff took meals in his cell but was permitted visitors in accordance with the facility's regular schedule. (R.

---

[5] The reason given for the modification was that the nature of the conduct did not warrant the penalty imposed. (R. 141).

[6] Although Plaintiff's keeplock sentence concluded after 90 days, by that point he had been placed in the special housing unit ("SHU") for another infraction. (R. 97).

4

95, 96).[7]

### 2. 1998 Southport Hearing

On May 13, 1998, while incarcerated at the Attica Correctional Facility, Plaintiff was again charged with several disciplinary infractions, including assault on staff, violent conduct, creating a disturbance and interference with an employee. (Plntf's Rule 56 Stmt. ¶ 20). A rehearing[8] commenced on August 20, 1998, by which time Plaintiff had been transferred to Southport Correctional Facility. (Plntf's Rule 56 Stmt. ¶ 24). Defendant Kearney presided over the rehearing at Southport. The rehearing was tape recorded, however, large portions of that recording were inaudible and thus were unable to be properly transcribed.[9]

Plaintiff requested that testimony from nine inmates be taken as part of his defense. (Plntf's Rule 56 Stmt. ¶ 25; R. 163). None of the inmate witnesses whose testimony was sought by Plaintiff resided at Southport. During the hearing, Kearney indicated that several of the inmates had refused to testify and Kearney reviewed the refusal forms with Plaintiff. (R. 168-170). Kearney also indicated that two inmates, Sales and Vasquez had agreed to testify, and a third inmate, McKinney had submitted a written statement. (R. 173-74). At some point during the hearing, Plaintiff was removed for being disruptive. The

---

[7]Plaintiff was not permitted to attend regular programs (R. 95), but no testimony was elicited concerning whether or not Plaintiff was permitted to attend religious services or the frequency with which Plaintiff was afforded showers. Plaintiff does not complain that his keeplock conditions were more onerous than the normal keeplock conditions.

[8]The outcome of the original hearing on these charges was administratively reversed and a rehearing was ordered.

[9]Additionally, it does not appear that the tapes were transcribed in the proper order, resulting in a transcript that is not in chronological order and is a piecemeal account of the proceedings.

5

incident leading to Plaintiff's removal was not recorded. Shortly after the incident, however, Kearney placed the following statement on the record:

> The time is 1:42 p.m. I was just about to reconvene the tier hearing on Webb, Michael, Webb 90 Alfa 4906. Mr. Webb came into the uh hearing room, refused to speak to the hearing officer, and then un referred to the hearing officer as another one. Stating that I was a house nigger. Uh the inmate has been removed from the hearing room. I am going to continue the hearing without inmate Webb.

(R. 186).

During the remainder of the hearing, Kearney telephoned Attica Correctional Facility and attempted to elicit testimony from inmates Sales and Vasquez.[10] (R. 186). Kearney's discussion with inmate Sales was recorded. The portions of Sales' responses to Kearney's questions reveal that Sales had no recollection of the incident. (R. 186). Other portions of Sales' responses were inaudible. The recording indicates that inmate Vasquez was also asked various questions but Vasquez's responses were not audible on the tape. (R. 186). In a summary of the questioning of the inmates, Kearney stated that he took testimony from inmate Sales and that inmate Vasquez initially disclaimed knowledge of the incident and then claimed to be unable to speak English. (R. 155). Kearney also heard testimony from Lt. Dixon, who did not see the beginning of the incident (and hence could not testify as to whether Plaintiff had committed the assault) but who witnessed the attempts to restrain Plaintiff.

---

[10] The transcript indicates that Kearney spoke with inmate Vasquez, although Kearney on more than one instance indicated that he had spoken with inmate Small. In fact, in Kearney's summary of the evidence just prior to the statement of his determination, he claims to have spoken with inmate Small who stated that he did not remember the incident and did not want "to say the wrong thing and get inmate Webb in deeper trouble." (R. 189). In that same summary, Kearney indicated that it was inmate Sales who claimed to be unable to speak English. (R. 189). As the remainder of the record indicates that Sales disclaimed knowledge of the event and Vasquez claimed to be unable to speak English, it appears that Kearney misidentified the inmates in his summary of the testimony.

At the conclusion of the rehearing, Kearney adjudged Plaintiff guilty of assault on staff, violent conduct and interference with an employee[11] and imposed a penalty of 465 days in the Special Housing Unit ("SHU") and loss of other privileges, and recommended the loss of 12 months of good time credits. (Plntf's Rule 56 Stmt. ¶ 39; R. 190). Plaintiff appealed that determination to defendant Selsky who affirmed the determination and penalty on November 13, 1998. (R. 196). On June 4, 1999, however, Selsky reduced Plaintiff's penalty to 12 months in the SHU and loss of 12 months good time. (R. 197-98). Plaintiff filed an Article 78 proceeding challenging his August 1998 rehearing and, on December 21, 1999, the New York State Supreme Court, Chemung County, vacated the guilty determination and ordered expungement based on Kearney's failure to comply with state law requirements that he verify the inmates' refusals to testify. (R. 199-201).[12]

Plaintiff contends that his procedural due process rights were violated by Nagy's failure during the 1997 disciplinary hearing to call the facility physician rather than a nurse as a witness, and by Kearney's failures during the 1998 disciplinary hearing to (1) verify that the inmate witnesses called by Plaintiff had actually refused to testify; and (2) preserve on the record the reasons why testimony was not taken from inmate witnesses Sales and Vasquez; and (3) improperly removed Plaintiff from the hearing. Plaintiff argues that Selsky also contributed to the violation of these rights by affirming the decisions reached upon the conclusion of these allegedly faulty hearings.

---

[11]The charge of creating a disturbance was dismissed.

[12]Plaintiff did not commence serving the punishment imposed by Kearney until June 29, 1999, because, at the time Kearney imposed the punishment, Plaintiff was already serving a period of SHU confinement of 545 days which had been imposed for a previous disciplinary charge. Plaintiff served 144 days in the SHU on these charges. (R. 110).

## III.  DISCUSSION AND ANALYSIS

### A.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).  A fact is "material" if it "might affect the outcome of the suit under governing law."  Anderson, 477 U.S. at 248.  In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L. Ed.2d 265 (1986).

At this stage, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  Thus, summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  Ford, 316 F.3d at 354.

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion."  Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1609,

26 L. Ed.2d 142 (1970).  However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

Where, as here, a pro se litigant is involved, the pleadings are construed liberally and interpreted to "raise the strongest arguments they suggest."  McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).  However, "at some point in a lawsuit even pro se litigants must make clear to the court their claims and the facts that they believe entitle them to specific relief.  The summary judgment stage is an appropriate juncture to identify the real issues in a case."  Salahuddin v. Coughlin, 781 F.2d 24, 29 (2d Cir. 1986).

**B.  Due Process Standard**

Plaintiff contends that Nagy violated his due process rights at the 1997 Green Haven hearing because Nagy refused Plaintiff's request to call as a witness a facility physician who examined Plaintiff.  Plaintiff next contends that Kearney violated his due process rights at the 1998 Southport rehearing by failing to verify that certain inmate witnesses requested by Plaintiff had, in fact, refused to testify on his behalf, by failing to obtain the testimony of the two inmates who had agreed to testify and by improperly removing Plaintiff from the hearing.  Finally, Plaintiff contends that defendant Selsky violated his due process rights by failing to remedy the violations of his rights by Nagy and Kearney.  Defendants argue that Plaintiff was either not entitled to due process protections or that any process due him was provided at both of the hearings.  Defendants further

9

argue that, even if Plaintiff's due process rights were violated, they are entitled to qualified immunity because his right to due process was not clearly established at time.

An inmate has "no right to procedural due process at his hearing unless a liberty interest" was infringed as a result. Scott v. Albury, 156 F.3d 283, 287 (2d Cir. 1998). An inmate has a liberty interest in remaining free from disciplinary confinement that "imposes [an] atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed.2d 418 (1995). In determining whether or not the confinement presents such a hardship, the Court looks to the actual punishment. Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (citing Scott, 156 F.3d at 287), The court considers such factors as "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" and "the duration of the disciplinary segregation imposed compared to discretionary confinement." Id. (quoting Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998)). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." Sealey v. Giltner, 197 F.3d 578, 586 (2d Cir. 1999). In Sealey, the Second Circuit concluded that confinement in the SHU under normal conditions for a period up to 101 days generally does not constitute an "atypical" hardship. Sealey, at 589. However, the Second Circuit has also "noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of Sealey or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." Palmer, 364 F.3d at 65. Courts are instructed to develop a detailed factual record when the period

of confinement is "intermediate" in duration or between 101 and 305 days.  Sealey, at 589. Confinement exceeding 305 days, without more, is sufficient to constitute an infringement of a liberty interest.  Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000).

If a liberty interest has been infringed, the court must then consider whether adequate procedural due process has been provided.  The Second Circuit has stated:

> [A]n inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken.

Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citations omitted).  An inmate's right to call witnesses is not unlimited and a hearing officer may exclude witness testimony where such exclusion is "justifiable."  Scott v. Kelly, 962 F.2d 145, 146 (2d Cir. 1992).  Testimony or other evidence may be excluded where it is "irrelevant or unnecessary."  Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir. 1999).  A hearing officer who excludes such evidence, however, bears the burden of explaining the rationale for the exclusion either at the hearing or "later," *i.e.*, in defense of a lawsuit.  Ponte v. Real, 471 U.S. 491, 497-98, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985); Scott, 962 F.2d at 147.

1. 1997 Green Haven Hearing

Defendants contend that they are entitled to summary judgment because Plaintiff's 90 day term of keeplock confinement, as a matter of law, does not implicate a liberty interest.  Defendants further assert that, even if Plaintiff's liberty interest has been burdened, he was afforded due process because the testimony of the facility physician as sought by plaintiff "would have been neither relevant nor necessary." Def's Mem. at 6.  In opposition, Plaintiff discusses the factors the Court considers when determining whether

a liberty interest is stated. Plaintiff notes that most of his keeplock confinement was served at Wende and Attica correctional facilities, both of which segregate their keeplocked inmates on separate companies or blocks, away from the general population. Plaintiff does not contend that he was subjected to any conditions more onerous than the normal keeplock confinement restrictions.

The Court concludes that Plaintiff's 90 day period of confinement, which was served under normal keeplock conditions, does not implicate a liberty interest and thus Plaintiff cannot state a due process claim arising from Nagy's August 1997 Green Haven hearing. Accordingly, Defendants' Motion for Summary Judgment is granted as to this claim.[13]

### 2.     1998 Southport Rehearing

Defendants argue that Plaintiff's August 1998 rehearing comported with due process because Kearney was not required to independently verify the refusals of various inmates to testify on Plaintiff's behalf.[14] Defendants further argue that Kearney did not violate Plaintiff's rights by removing him from the hearing and that, even if such action did violate Plaintiff's rights, Kearney is entitled to qualified immunity.[15] Plaintiff argues that Kearney should have verified that each inmate had refused to testify, that Kearney failed to obtain

---

[13] Therefore, the Court does not reach defendants' alternative argument that Nagy did not violate Plaintiff's due process rights when he refused to call the facility physician as a witness. The Court notes, however, that defendants failed to submit any *evidence* demonstrating Nagy's reason for excluding the witness.

[14] Defendants do not argue that the period of confinement attributable to the rehearing does not implicate a liberty interest. Plaintiff served 144 days of SHU confinement due to Kearney's adjudication. That sentence was imposed, however, consecutive to another SHU sentence of 545 days. The Second Circuit has suggested that "'separate sentences should be aggregated for purposes of the Sandin inquiry[] when they constitute a sustained period of confinement.'" Giano v. Selsky, 238 F.3d 223, 226 (2d Cir. 2001) (citations and quotations omitted).

[15] Defendants arguments supporting a grant of qualified immunity differ from the court's reasons for granting it.

the testimony of the inmates who had agreed to testify and that Kearney improperly removed him from the hearing.

As previously noted, six out of the nine inmate witnesses requested by Plaintiff refused to testify on his behalf. During the rehearing, Kearney discussed those witnesses with Plaintiff and Plaintiff was provided with copies of forms documenting their refusals to testify. "A failure to summon the testimony of a witness who has refused to testify, in the absence of evidence that the refusal was linked to intimidation on the part of prison officials, does not violate due process because calling a witness who refuses to speak upon questioning would be futile." Johnson v. Doling, No. 9:05-CV-376, 2007 WL 3046701, at * 7 (N.D.N.Y. Oct. 17, 2007) (citing Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1983)). Plaintiff has not alleged, and the record provides no indication, that intimidation by prison officials resulted in the refusals of the witnesses. Thus, the failure to call these witnesses did not violate due process.

Plaintiff also alleges that Kearney failed to obtain testimony from two witnesses, Sales and Vasquez, who had agreed to testify. Plaintiff contends that when Kearney contacted the facility at which the inmates were housed, Kearney could not hear the inmates' responses to his questions and therefore failed to obtain their testimony.

The following exchange appears in the transcript of the hearing:

Kearney: Uh, the time is 1:43. I'm going to stop the tape and call Attica Correctional Facility. All right this is Captain Kearney at Southport Correctional Facility. The time is 1:53. I have via speaker phone inmate, would you state your name please?

Sales: Inmate Sales.

Kearney: Okay. The incident occurred on May 13th, 1998 at approximately 4:30 in B-Block at the Attica Correctional

13

|||
|---|---|
| | Facility. Do you remember an incident? |
| Sales: | No. |
| Kearney: | You don't remember the incident? |
| Sales: | I wasn't, I have not information on, on the . . . . . . . this. |
| Kearney: | Okay could you put Mr. Small on the phone. |
| Sales: | Who? |
| Kearney: | Oh Vez, Vasquez rather. Inmate Vasguez is there with you? Inmate Vasquez is there? Hello Mr. Vasguez this is Captain Kearney at Southport Correctional Facility. Uh do you remember an incident that occurred in B-Block in May of this year involving inmate Webb? In B-Block on 14 Company? Do you recall the incident? An inmate got in an argument and then a fight with an officer. Yes do you recall that incident? (Please note I could not hear the other end of this conversation taking place.) (End of Side B Tape 98-592). |

R. 186.

Based on this Court's reading of the transcript, it appears that Kearney did, in fact, speak to both Sales and Vasquez but their responses were inaudible on the tape recording of the hearing and therefore were not transcribed. This reading is confirmed by another portion of the transcript wherein Kearney summarizes the testimony of Sales and Vasquez. (R. 155, 189).[16] Thus, Kearney did not fail to contact these witnesses.

Finally, Plaintiff alleges that Kearney erred by removing him from the hearing. Defendants, citing Francis v. Couglin, 891 F.2d 43, 48 (2d Cir. 1989), argue that Plaintiff

---

[16]Further complicating matters is Kearney's apparent confusion regarding the names of the inmates he was to contact. As is seen in the quoted portion of the transcript, Kearney had asked to speak with an inmate named Small, but corrected himself and instead then asked to speak with, and did speak with, inmate Vasquez. In a summary of the evidence relied on, Kearney again misspoke and attributed some testimony to inmate Small. This was simply an error on Kearney's part. Plaintiff had requested that inmate Small be called as a witness, but Small refused to testify and Kearney discussed with Plaintiff the form documenting Small's refusal to testify.

had no constitutional right to be present during the testimony of witnesses. More recent Second Circuit cases, however, mention an inmate's right to be present at a hearing. In Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir. 1992), the Second Circuit referred to "the opportunity to appear at the hearing and to call witnesses." Similarly, in the unreported decision in Chavis v. Zodlow, 128 Fed. Appx. 800, 805, No. 04-0447, 2005 WL 834646, at *3-*4 (2d Cir. 2005), the Second Circuit stated that the Supreme Court in Wolff v. McDonnell[17] acknowledged an inmate's limited right to be present during his disciplinary hearing. Thus, it would appear that Plaintiff may have had at least a limited right to appear at his hearing.

This Court need not decide whether Kearney's actions in excluding Plaintiff from a portion of the hearing due to Plaintiff's alleged misbehavior constitute a violation of due process because, even if Plaintiff's right to appear was violated, Kearney is entitled to qualified immunity. Qualified immunity is available to a defendant unless his or her actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). In determining whether a particular right is clearly established, courts consider:

> (1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991). As noted, the law of this circuit at best intimates or implies the existence of a right, or a limited right, of an inmate to be

---

[17]418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

present at his disciplinary hearing.[18]  The contours of that right have not been clearly established such that a reasonable person, in Kearney's position, would have known that excluding Plaintiff violated his due process rights.  Thus, the Court concludes that, assuming Kearney's conduct violated Plaintiff's right to be present at the hearing, Kearney is nevertheless entitled to qualified immunity from suit.  Defendants' Motion for Summary Judgment is granted as to this claim.

   3. Claims against Selsky

Plaintiff seeks to hold Selsky liable for his failure to remedy the due process violations committed by the Nagy and Kearney.  Defendants argue that during Plaintiff's deposition he explicitly withdrew his claims against defendant Selsky with respect to the two hearings at issue.  Plaintiff did in fact make such statement, however, he changed his mind upon further questioning by defendants' counsel.  During the deposition, the following exchange took place:

> Q:  That's right, and I'm trying to understand, given that your complaint refers to a number of events that are no longer part of the case, I'm trying to understand whether you are attempting to sue Mr. Selsky regarding the two hearings that are left in.
> A:  Yeah, I'm going to have to see according to this, according to the way I have it written here.  After going over it, I would have to say yes.

(R. 16-17).  Thus, Defendants' argument that Plaintiff abandoned his claims as to Selsky is belied by the record.

However, as the Court has concluded that Plaintiff's due process rights were not violated, with perhaps the exception of a right to be present at Kearney's 1998 rehearing

---

[18]Logically, it would seem obvious that an inmate has at least some right to be present through which he can exercise his limited right to call witnesses and submit documentary evidence.

16

to which qualified immunity attaches, Plaintiff's claims against Selsky likewise fail. Defendants' Motion for Summary Judgment is granted as to the claims against Selsky.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted in its entirety and the Complaint is dismissed.

## V.  ORDERS

IT IS HEREBY ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 60) is GRANTED in its entirety consistent with the foregoing decision.

FURTHER, that Plaintiff's Complaint is dismissed.

FURTHER, that the Clerk of the Court is directed to take all steps necessary to close the case

SO ORDERED.

Dated:  March 24, 2008
        Buffalo, New York

                          /s/William M. Skretny
                          WILLIAM M. SKRETNY
                          United States District Judge